UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SINE CHAO, Individually, and as Officer of LASERLITH CORPORATION,<br><br>Defendant. | 4:19-cv-04029-KES<br><br><br><br>SETTLEMENT AGREEMENT |

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the National Science Foundation (NSF), National Aeronautics and Space Administration (NASA), and the Department of Energy (DOE), (collectively United States) and Sine Chao, Individually and as Owner, President and Principal Corporate Officer, of Laserlith Corporation (Debtor), (hereafter collectively referred to as "the Parties"), through their authorized representatives.

### RECITALS

A. Shareholders, directors, and officers of MicroAssembly Technologies Incorporated (MicroAssembly), knowingly devised a scheme to obtain Small Business Innovation Research (SBIR) and Small Business Transfer Technology Research (STTR) Program funds from various United States agencies to enrich themselves, by forming subsidiary corporations,

wholly controlling the operation and management of those entities, interchanging the names of officers in various STTR and SBIR proposals, without disclosing the relationship amongst them, performing overlapping activities on projects, and knowingly submitting or causing to be submitted, false or fraudulent claims for payment.

B. In 2018, the United States filed criminal charges in the United States District Court captioned *United States v. Wallace Tang, Microassembly Technologies, Incorporated, Laserlith Corporation, Black Hills Nanosystems Corporation, and Blue Sky Engineering Incorporated*, CR18-40100, United States District Court, District of South Dakota, Southern Division. The Defendants pleaded guilty to Wire Fraud or Conspiracy to Commit Wire Fraud, entered Factual Basis Statements to support the pleas, and paid restitution in the amount of $1,084,418.60, joint and several.[1]

C. The United States contends that it has certain civil claims against Debtor, arising from the submission of false claims and materially false statements and misrepresentations, consisting of the preparation and submission of proposals for awards to the NSF, NASA, and DOE's

---

[1] Wallace Tang pleaded guilty to Wire Fraud, in violation of 18 U.S.C. § 1343. Blue Sky Engineering, by and through Wallace Tang, executive corporate principal and officer, pleaded guilty to Conspiracy to Commit Wire Fraud. 18 U.S.C. § 1349. Black Hills Nanosystems Corporation, by and through Gina Kim, its duly authorized officer, pleaded guilty to Conspiracy to Commit Wire Fraud. Laserlith Corporation, by and through Sine Chao, its duly authorized officer, pleaded guilty to Conspiracy to Commit Wire Fraud. *See United States v. Wallace Tang et al.,* CR18-40100.

2

SBIR and STTR programs, from approximately 2012, through April 2016 as specified in the Factual Basis Statements executed by the Defendants and filed in the criminal action. *See United States v. Wallace Tang, et al.*, CR18-40100. That conduct is referred to below as the Covered Conduct.

D. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement (Agreement), the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. In addition to any restitution Debtor has paid in connection with the criminal case referenced herein, Debtor agrees to pay the United States One Hundred Twenty-two Thousand Four Hundred Fifty-two Dollars ($122,452.00) (Settlement Amount), on or before October 31, 2020. Payment shall be made by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney, District of South Dakota.

2. Subject to the exceptions in Paragraph 3 (concerning excluded claims), other terms of this Agreement, and conditioned upon Debtor's full payment of the Settlement Amount, the United States releases Debtor from any civil monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

3. Notwithstanding the release given in Paragraph 2 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

   a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);
   b. Any criminal liability not already resolved by the criminal case *United States v. Wallace Tang et al.*, CR18-40100;
   c. Except as explicitly stated in this Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;
   d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;
   e. Any liability based upon obligations created by this Agreement;
   f. Any liability of individuals who receive notification that they are the target of a criminal investigation, are indicted or charged, or who enter into a plea agreement, related to the Covered Conduct; and
   g. Any liability related to the Covered Conduct of individuals who are not parties to this Agreement, specifically Wallace Tang, Gina Kim, other corporate officers, and Defendants in this action.

4. Debtor waives and shall not assert any defenses she may have to any action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

5. Upon execution of this Agreement, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal pursuant to Fed. R. Civ. P. 41(a)(1). The stipulation of dismissal shall provide that the action is being dismissed against only the undersigned Debtor,

4

"subject to the terms of the settlement agreement," and that the Court retains jurisdiction over the Parties to the extent necessary to enforce the terms and conditions of the Settlement Agreement. Further, as to the United States, the action is being dismissed, with prejudice as to the Covered Conduct released in this Agreement, and without prejudice as to any other claims.

6. Debtor agrees to the following:

a. Unallowable Costs Defined: That all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Debtor, and present or former officers, directors, employees, shareholders, and agents in connection with:
   i. the matters covered by this Agreement;
   ii. the United States' investigation(s) of the matters covered by this Agreement;
   iii. Debtor's investigation, defense, and corrective actions undertaken in response to the United States' investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);
   iv. the negotiation and performance of this Agreement; and
   v. the payment(s) Debtor makes to the United States pursuant to this Agreement, including costs and attorney's fees;
   
   are "Unallowable Costs" for government contracting purposes (hereinafter referred to as "Unallowable Costs").

b. Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Debtor, and Debtor shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Debtor shall separately account for these Unallowable Costs and shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States. Any Unallowable Costs that were previously submitted or treated as allowable costs for government contract accounting purposes shall be withdrawn, and any charges, or charges previously submitted, that were based on such costs shall be adjusted accordingly.

5

      d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or reexamine Debtor's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

      7.      Debtor has provided sworn financial disclosure statements (Financial Statements) to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Debtor warrants that the Financial Statements are complete, accurate, and current as of the date of this Agreement. If the United States learns of asset(s) in which Debtor had an interest of any kind at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any false statement or misrepresentation by Debtor on, or in connection with, the Financial Statements, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth set forth in the Financial Statements by $5,000 or more, the United States may at its option: (a) rescind this Agreement and reinstate its suit or file suit based on the Covered Conduct, or (b) collect the full Settlement Amount in accordance with the Agreement plus one hundred percent (100%) of the value of the net worth of Debtor's previously undisclosed assets. Debtor agrees not to contest any collection action undertaken by the United States pursuant to this provision, and agrees that she will immediately pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United

States' reasonable attorneys' fees and expenses incurred in such an action. In the event the United States, pursuant to this Paragraph rescinds this Agreement, Debtor waives and agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 120 calendar days of written notification to Debtor that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on February 8, 2019.

8. The Settlement Amount represents the amount the United States is willing to accept in compromise of its civil claims against Debtor arising from the Covered Conduct due solely to Debtor's financial condition as reflected in the Financial Statements referenced above.

    a. In the event Debtor fails to pay the Settlement Amount as provided in Paragraph 1 above, Debtor shall be in Default of her payment obligations (Default). The United States may provide a written Notice of Default, by first class mail to Debtor's last known address, and Debtor shall have an opportunity to cure such Default within seven (7) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under the Settlement Agreement up to the date of payment. If Debtor fails to cure the Default within seven (7) calendar days of receiving the Notice of Default, and in the absence of an agreement with the United States to a modified payment schedule (Uncured Default), the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

    b.    In the event of Uncured Default, Debtor agrees that the United States, at its sole discretion, may (i) declare this Agreement breached and proceed against Debtor for any claims, including those to be released by this Agreement; (ii) take any action to enforce this Agreement in a new action or by reinstating the Civil Action; and/or (iii) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity. At its sole option, the United States may retain any payments previously made, rescind this Agreement and pursue the Civil Action or bring any civil and/or administrative claim, action, or proceeding against Debtor for the claims that would otherwise be covered by the releases provided in Paragraph 2 above with any recovery reduced by the amount of any payments previously made by Debtor to the United States under this Agreement. The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States pursues a collection action, Debtor agrees to immediately pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event the United States opts to rescind this Agreement pursuant to this Paragraph, Debtor waives and agrees not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the United States against Debtor within 120 days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on February 8, 2019. Debtor agrees not to contest any offset, recoupment, and /or collection action undertaken by the United States pursuant to this Paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

9.    In exchange for valuable consideration provided in this Agreement, Debtor acknowledges the following.

    a.    Debtor has reviewed her financial situation and warrants that she is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount.

8

b. In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Debtor, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c. The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

d. The Parties do not intend to hinder, delay, or defraud any entity to which Debtor was or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

e. If Debtor's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, or if, before the Settlement Amount is paid in full, Debtor or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtor (i) seeking any order for relief of Debtor's debts, or to adjudicate Debtor as bankrupt or insolvent; or (ii) seeking appointment of a receiver, trustee, custodian, or other similar official for Debtor or for all or any substantial part of Debtor's assets, (a) the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Debtor for the claims that would otherwise be covered by the releases provided in Paragraph 2 above; and (b) the United States has an undisputed, noncontingent, and liquidated allowed claim against Debtor in the amount of $122,452.00, less any payments received pursuant to this Agreement, provided, however, that such payments are not otherwise avoided and recovered by Debtor, a receiver, trustee, custodian, or other similar official for Debtor.

f. Debtor agrees that any such civil and/or administrative claim, action, or proceeding brought by the United States is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Debtor shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Debtor waives and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any

9

such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Debtor that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on February 8, 2019.

10. Debtor fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that she has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof. Nothing in this Agreement constitutes an agreement concerning the characterization of the settlement proceeds.

11. Debtor agrees to cooperate fully and truthfully with the United States' investigation and/or litigation of individuals and entities not released in this Agreement with respect to the Covered Conduct. Upon reasonable notice, Debtor shall encourage, and agrees not to impair, the cooperation of corporate directors, officers, and employees, and shall use her best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Debtor further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in her possession, custody, or control concerning

10

any investigation of the Covered Conduct that has been undertaken, or that has been performed by another on her behalf.

12. This Agreement is intended to be for the benefit of the undersigned only and does not affect the rights and obligations of other parties in this Civil Action.

13. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

14. Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

15. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of South Dakota. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

16. This Agreement constitutes the complete agreement among the Parties. This Agreement may not be amended except by written consent of the Parties.

17.   The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

18.   This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

19.   This Agreement is binding on Debtor's successors, transferees, heirs, and assigns.

20.   All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

21.   This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**DEBTOR**

DATE: 10/7/2020

_____
Sine Chao, Individually and as Officer of
Laserlith Corporation
309 Mountain Ave
Piedmont, CA  94611

**COUNSEL FOR DEBTOR**

DATE: 10/7/2020

*[signature]*

Michael Li-Ming Wong (Pro Hac Vice)
Steve W. Henrick (Pro Hac Vice)
Gibson, Dunn & Crutcher LLP
555 Mission Street
San Francisco, CA 94304-1211
(415) 393-8200

DATE:_____

_____
Joel R. Rische
Davenport, Evans, Hurwitz & Smith, LLP
206 West 14th Street
PO Box 1030
Sioux Falls, SD 57101-1030
(605) 357-1259

**COUNSEL FOR PLAINTIFF**

UNITED STATES OF AMERICA
RONALD A. PARSONS, JR.
UNITED STATES ATTORNEY

DATE:_____

_____
Cheryl Schrempp DuPris
Ellie J. Bailey
Assistant United States Attorneys
P.O. Box 7240
225 South Pierre Street
Pierre, South Dakota, 57501
(605) 224-5402

13

**COUNSEL FOR DEBTOR**

DATE: _____        _____

Michael Li-Ming Wong (Pro Hac Vice)
Steve W. Henrick (Pro Hac Vice)
Gibson, Dunn & Crutcher LLP
555 Mission Street
San Francisco, CA  94304-1211
(415) 393-8200

DATE: Oct. 7, 2020

Joel R. Rische
Davenport, Evans, Hurwitz & Smith, LLP
206 West 14th Street
PO Box 1030
Sioux Falls, SD 57101-1030
(605) 357-1259

**COUNSEL FOR PLAINTIFF**

UNITED STATES OF AMERICA
RONALD A. PARSONS, JR.
UNITED STATES ATTORNEY

DATE: Oct. 14, 2020

Cheryl Schrempp DuPris
Ellie J. Bailey
Assistant United States Attorneys
P.O. Box 7240
225 South Pierre Street
Pierre, South Dakota, 57501
(605) 224-5402

13